IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOUGLAS McGREW, Y13525, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 23-cv-2171-MAB ) |
| DENNIS LARSON, WEXFORD HEALTH SOURCES, INC., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Douglas McGrew, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Big Muddy Correctional Center (Big Muddy), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights (Doc. 14). Specifically, Plaintiff alleges that the defendants have exhibited deliberate indifference towards chest/lung issues he experienced in the Winter of 2022. He seeks declaratory, injunctive, and monetary relief. The Court dismissed the original complaint as insufficient to state a claim, and Plaintiff filed a timely Amended Complaint.

The Amended Complaint (Doc. 14) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff alleges that on February 2, 2022, Defendant Dr. Larson was informed that he was having respiratory problems and needed treatment for shortness of breath and chest tightness. (Doc. 14 at 3). Plaintiff's vitals were taken, and Dr. Larson was informed that Plaintiff had a history of bronchitis. (*Id.* at 4). Dr. Larson noted that Plaintiff's lungs could be swollen, so he suggested a Covid-19 test, and he directed a 3-day medical lay-in and prednisone. Plaintiff asked about potential side-effects of prednisone, but Dr. Larson would not explain side-effects, so Plaintiff ultimately decided after a single dose to stop the prednisone for fear of side effects. (*Id.* at 4-5).

Plaintiff alleges that he sent requests slips and grievances because he felt that his treatment was being delayed, and he had continued symptoms such as shortness of breath, chest tightness, trouble sleeping, and difficulty with his normal daily activities. (Doc. 14 at 5). He further alleges that because of the delays in treatment he developed a mass on his right lung.

After an x-ray, Defendant Dr. Larson spoke to him about the findings, and suggested he could have a cancerous mass on his lung. Dr. Larson referred Plaintiff to an

outside hospital where, after many scans, a biopsy was ordered. (Doc. 14 at 7). Plaintiff also states that the spot is decreasing in size, and that a non-party doctor has provided him with albuterol. Medical records attached to the complaint suggest that the spot has decreased in size, and that the provider offered the option of short-term follow-up via imaging, instead of a biopsy. (Doc. 34 at 21).

In addition to the factual allegations about his medical condition, Plaintiff describes problems with the processing of his grievances about this issue. He originally submitted a grievance on February 11, 2022, which appears to have been deemed an emergency by the facility on February 14, 2022. (Doc. 14 at 30). Plaintiff alleges that after this grievance was deemed an emergency, he heard nothing for an entire year. On December 28, 2022, he prepared a second grievance to inquire as to the status of the first. (Doc. 17 at 33-34). The second grievance was exhausted at all levels, but the Administrative Review Board rejected it as filed outside the timeframe set by the grievance rules. (Doc. 14 at 36). Eventually, on March 2, 2023, the grievance office reviewed Plaintiff's original grievance. (Doc. 14 at 37). On March 10, 2023, the Chief Administrative Officer concurred with the grievance office's finding that Plaintiff's medical needs had been appropriately addressed. (*Id.*). Plaintiff alleges he appealed, but he does not disclose the outcome from the Administrative Review Board.

In the grievance office response to the original grievance, Plaintiff's care in February, March, and April of 2022 is briefly chronicled. (Doc. 14 at 37). Dr. Larson was first notified of problems on February 10, 2022, and first examined Plaintiff on February 17, 2022. At the first consultation, he ordered labs, continued prednisone, and a chest x-

ray. The labs were conducted approximately a week later, and the chest x-ray was completed on March 11, 2022. (*Id.*).

Based on the allegations in the Amended Complaint, the Court designates the following count:

**Claim 1:   Eighth Amendment deliberate indifference claim against Defendant Dr. Larson;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSAL

In the Complaint Plaintiff named Wexford Health Sources, Inc., but he does not advance any factual allegations directed at Wexford. As the Court previously explained, Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-

settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Plaintiff does make any allegations about Wexford at all, so he has plainly failed to state a claim against Wexford.

## DISCUSSION

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (*i.e.*, an objective standard) and also show that each defendant responded with deliberate indifference (*i.e.*, a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, cause some harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). He must also show it was the defendant's actions or inaction that caused the delay in treatment. *Walker*, 940 F.3d at 964.

The Court previously found that Plaintiff's allegations against Dr. Larson were insufficient to make out a deliberate indifference claim, because it was not apparent that Dr. Larson was aware of any delays in care, or that he personally participated in any delays. It also appeared that he responded quickly to Plaintiff's initial complaints of chest issues, and he provided multiple initial solutions—including prednisone, a lay-in pass, and an order for an x-ray. Upon first read of the complaint, it appeared that all three steps were taken almost instantaneously with Plaintiff's first report of symptoms. While this general sketch of the facts still appears accurate, Plaintiff's amended complaint emphasizes (and via exhibits) that there may have been some delays in his care that caused him to suffer his symptoms for longer than necessary, or to suffer a worse outcome. Plaintiff has supported his assertion of delays by the inclusion of the grievance office's response to his original grievance, which shows that he first reported problems on February 11, 2022, but did not have an x-ray for a month beyond that date.

Given the inclusion of additional evidence, the Court finds that Plaintiff has now alleged enough to make out a plausible claim against Dr. Larson regarding his response to Plaintiff's chest issues in February of 2022. Not every delay in care equates to deliberate indifference, and inmates are not entitled to demand a specific course of care, but at this preliminary juncture, Plaintiff has presented enough facts to plausibly suggest his care

was delayed and that he suffered as a result of that delay. For now, the claim will proceed against Dr. Larson.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 14) survives initial screening as described above against Defendant Dr. Larson. By contrast, Plaintiff failed to state a claim against Defendant Wexford Health Service, Inc., and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Wexford without prejudice for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendant Dr. Larson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 14), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order, because this case will involve the exchange of medical records.

**IT IS SO ORDERED.**

DATED: December 12, 2023

/s/ Mark A. Beatty  
**MARK A. BEATTY**  
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.